**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**DONALD A. BALDER**                                                    **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 2:16-CV-130-KS-MTP**

**THOMAS E. LAVIN; SURGICAL
SPECIALISTS OF LOUISIANA, LLC;
SURGICAL SPECIALISTS OF
MISSISSIPPI, LLC; MICHAEL A.
THOMAS, CLARK WARDEN; JAMES
G. REDMANN; and JOHN DOES 1-10**                      **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Motion for Summary Judgment [73] filed by Defendant Surgical Specialists of Louisiana, LLC ("SSL"), the Motion for Summary Judgment [75] filed by Defendant Thomas E. Lavin ("Lavin"), and the Motion for Summary Judgment [77] filed by Plaintiff Donald A. Balder ("Plaintiff"). After considering the submissions of the parties, the record, and the applicable law, the Court finds that

1.  SSL's Motion for Summary Judgment [73] is well taken and should be granted;

2.  Lavin's Motion for Summary Judgment [75] is well taken and should be granted; and

3.  Plaintiff's Motion for Summary Judgment [77] is not well taken and should be denied.

## I. BACKGROUND

Plaintiff filed the current suit on August 30, 2016, against Defendants SSL, Lavin, Surgical Specialists of Mississippi, LLC ("SSM"), Michael Thomas, and Clark Warden, asserting numerous causes of actions. SSL, Lavin, and SSM are the only defendant who remain in the case.

SSL is a limited liability company ("LLC"), whose members include Lavin.  SSM is an LLC whose sole owning member is SSL.

Plaintiff and Lavin met in 2011, and Plaintiff eventually expressed an interest in opening a bariatric surgery practice on the Mississippi Gulf Coast.  Plaintiff came to an agreement with Lavin, whereby SSL would create SSM to employ Plaintiff and his staff and SSL would provide certain managerial services for SSM.  For Plaintiff's first year of employment, it was agreed that he would be paid a fixed salary.  After this year was up, Plaintiff was presented with different compensation model options, but ultimately decided to enter into the same partner compensation model that other physicians in the practice used.

This employment arrangement began to break down in 2015, and in early 2016, Plaintiff's employment with SSM and his affiliation with SSL was terminated.  The claims in this suit stem from that break down and termination.

## II.  CHOICE OF LAW

A federal court sitting in diversity is bound to follow the substantive law of the forum state, including that state's conflict of law rules.  *Klaxon Co. v. Stentor Elec. Mfg. Co*, 313 U.S. 487, 496, 313 S. Ct. 1020, 1021, 85 L. Ed. 1477 (1941); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 114 A.L.R. 1487 (1938).  In Mississippi, a choice of law analysis is only appropriate where there is a true conflict between the laws of two or more states having an interest in the litigation.  *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 487 (Miss. 2006) (citing *Boardman v. United Servs. Auto. Ass'n*, 470 So.2d 1024, 1038 (Miss. 1985)).  Once a true conflict is found to exist, Mississippi then employs a three-step choice of law analysis:  (1) determine whether the conflicting laws are substantive or procedural; (2) classify the area of substantive law,

whether tort, property, or contract; and (3) look at the relevant section of the Restatement (Second) of Conflict of Laws. *Id.* at 488.

Parties assume without argument that there is a conflict of laws issue in this case. Defendants argue in their motions that Louisiana law should be applied, and Plaintiff argues in his motion that the laws of Mississippi apply. However, both sides concede in their responses to the other side's motion that an analysis under either state's law would reach the same result, which would mean there is no true conflict of law. Mississippi's choice of law rules, then, bind this Court to apply the substantive law of Mississippi. The Court will, however, apply Louisiana law to those specific instances where the Complaint [1] invokes Louisiana statutory law as the basis of Plaintiff's claim.[1] For claims where parties have cited only one state's law, the Court will accept that state's law as controlling for that claim for purposes of these motions.

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (citation and internal quotation marks omitted). The nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Id.* "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc. v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010) (quoting *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001)). "An issue is 'genuine' if the evidence is

---

[1] There are also instances, such as with Plaintiff's constructive trust claim, where there is clearly a true conflict of laws. In those instances, the Court will accept the law cited by the parties without making a choice of law decision.

sufficient for a reasonable [fact-finder] to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812 (citation omitted).

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009) (citing *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007)). When deciding whether a genuine fact issue exists, "the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002) (citation omitted). Summary judgment is mandatory "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Brown v. Offshore Specialty Fabricators, Inc.*, 663 F.3d 759, 766 (5th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

## IV. SSL'S MOTION FOR SUMMARY JUDGMENT [73]

### A. Single Business Enterprise

The Court first addresses Plaintiff's contention that SSL can be liable for the claims against SSM through the single-enterprise doctrine under Louisiana law. Putting aside the fact that this is a doctrine that applies under Louisiana law and Plaintiff has repeatedly argued that Mississippi law applies,[2] Plaintiff asserts this theory of liability for the first time in response to SSL's motion. Plaintiff acknowledges that this is a new theory of liability but contends that he was not required to specifically plead this theory in his complaint. In support, he cites this Court's previous opinion

---

[2] Plaintiff acknowledges these arguments but states that "it cannot be disputed" that Louisiana law applies in this one specific instance. (Memo. in Response [87] at p. 13, n. 7.)

in *Wells v. Healthcare Financial Servs., LLC*. No. 2:13-CV-256-KS-MTP, 2014 WL 5339377 (S.D. Miss. Oct. 20, 2014), opinion withdrawn on reconsideration on other grounds, 2014 WL 6474276 (S.D. Miss. Nov. 19, 2014). However, in *Wells*, the Court specifically held that "Plaintiff has not altered the theory of liability underlying her claims" and "[a]ll that has changed is the factual basis for the claim." *Id.* at *3. Furthermore, the Fifth Circuit has held that, because "[a] properly pleaded complaint must give 'fair notice of what the claim is and *the grounds upon which it rests*,'" it is not proper for a district court to consider new theories of liability first raised in response to a motion for summary judgment. *De Franceschi v. BAC Home Loans Servicing, L.P.*, 447 F.App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)) (emphasis added); *see also Montgomery v. Housby Mack, Inc.*, No. 3:15-CV-95-DPJ-FKB, 3:16-CV-23-DPJ-FKB, 2016 WL 6427275, at *5 (S.D. Miss. Oct. 28, 2016). The Court therefore will not consider this theory of liability.

**B.    Count I – Accounting**

Plaintiff's claim for accounting invokes Louisiana Revised Statute § 12:1319(B)(3), which gives members of an LLC a right to demand a formal accounting of the LLC's affairs. Plaintiff, however, does not dispute that he is not a member of SSL. Instead, without citation to any authority, he asserts that the Court "has the equitable power to order an accounting." (Memo. in Response [87] at p. 20.) Whether this bald assertion of the Court's authority is true is of no consequence. Plaintiff's demand for accounting is brought specifically under § 12:1319(B)(3), which does not apply to non-members. Therefore, summary judgment will be **granted** as to this claim, and it will be **dismissed with prejudice**.

## C. Counts V-VII, XII[3] – Contract Claims and Equitable Estoppel

SSL argues that there was no contract between it and Plaintiff and, as a result, his claims of breach of contract, tortious breach of contract, and breach of good faith and fair dealing must fail. Plaintiff argues that SSL's argument that there is no contract between them amounts to an affirmative defense of "lack of privity," which was not pleaded and therefore waived. This argument is unpersuasive because the existence of a contract is a necessary element of his breach of contract claim under Mississippi law. *See Favre Prop. Mgmt., LLC v. Cinque Bambini*, 863 So.2d 1037, 1044 (Miss. Ct. App. 2004) (listing the elements for breach of contract). An affirmative defense is a defense that "assumes the plaintiff proves everything he alleges and asserts, even so, the defendant wins." *Ashburn v. Ashburn*, 970 So.2d 204, 213 (Miss. Ct. App. 2007) (quoting *Hertz Commercial Leasing Div. v. Morrison*, 567 So.2d 832, 835 (Miss. 1990)). Because Plaintiff must prove there is a contract between himself and SSL before he can succeed on a breach of contract claim against SSL, the defense that no such contract exists is not an affirmative defense.

It is uncontroverted that the two contracts referenced in the Complaint [1], the Operating Agreement of SSL and the Employment Agreement, are not contracts between SSL and Plaintiff. First, Plaintiff is not a member of SSL and is therefore not a party to the Operating Agreement of SSL. Second, the Employment Agreement specifically states that it is between SSM and Plaintiff, and therefore SSL is not a party to it. (*See* Employment Agreement at p. 1.) Because there is no contract to which both SSL and Plaintiff are parties, there exists no contract between them.[4, 5]

---

[3] The Court addresses each count of the Complaint in the order presented in the memoranda in support of the motions.
[4] Plaintiff does not allege that either he is a third-party beneficiary with a right to enforce the contract he is not a party to.
[5] Plaintiff also argues that the existence of a contract is a question of fact and should be decided by the jury. While this is true, it is Plaintiff's burden on summary judgment to show that there is a genuine dispute as to any factual issue by bringing forward evidence that a question of fact could be answered in his favor. *See Cuadra*, 626 F.3d at 812

Plaintiff's claims for breach of contract, tortious breach of contract, and breach of good faith and fair dealing therefore fail and must be **dismissed with prejudice**.

SSL also contends that Plaintiff's claim for equitable estoppel must be dismissed as a matter of law. Plaintiff makes no argument or reference to his equitable estoppel claim. The Court therefore considers this claim waived, and it will be **dismissed with prejudice**. *See Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (quoting *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995)) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.")

### D. Counts IX-X – Negligence and Gross Negligence

With no citation to any authority, Plaintiff asserts that he was in a business relationship with SSL and "[a]ll corporate and individual persons who are in business relationship have a duty of due care to each other." (Memo. in Response [87] at p. 23.) This is not enough to establish that SSL had a duty to Plaintiff, which is Plaintiff's burden to prove at summary judgment. Even if he could establish SSL owed him a duty, though, Plaintiff has also not adduced evidence of breach of duty, causation, or injury.

Plaintiff lists seven specific instances of negligence attributable to SSL that caused him injury, most of which assume SSL is Plaintiff's employer despite Plaintiff being employed by SSM.

#### 1. Failure to provide and explain financial documents

Plaintiff has not established by evidence or legal authority that SSL had a duty to provide financial documents to him, nor has he shown that any such failure caused him injury. Furthermore, though Plaintiff has submitted a self-serving affidavit stating that "the financial

---

(citation omitted). Plaintiff has put forward no evidence here from which a reasonable jury could find that a contract existed between him and SSL.

documents were never adequately explained to [him]" and that "the partnership compensation model was never meaningfully explained to [him] especially in relation to the payment of general and direct overhead expenses," (Plaintiff Affidavit [86-42] at ¶ 12), this contradicts his own deposition testimony, during which he stated that he explained to Beth Bacon[6] and Lavin why he felt the compensation model was treating him unfairly, demonstrating his understanding of the documents, and went on to admit that he had a meeting with Lavin, along with Beth Bacon, Laura Boyer, and Tia Riche, to go over the financials and to modify the arrangement to be more fair. (*See* Plaintiff Depo. [92-1] at 219:2-221:23.) Therefore, even if SSL was found to have a duty towards Plaintiff with regards to these documents, the evidence shows that the financial documents were gone over with Plaintiff and that he understood them. SSL cannot, then, be liable for negligence or gross negligence on this basis.

### 2. Failure to address his compensation concerns

Plaintiff argues that SSL was also negligent in failing to address his compensation concerns. First, Plaintiff has not shown by evidence or argument that SSL, who was not his employer, had a duty to address his compensation concerns. Second, Plaintiff admitted in his deposition that his compensation concerns were addressed in a meeting that included himself, Beth Bacon, Laura Boyer, and Lavin. (*See* Plaintiff Depo. [92-1] at 219:2-221:23.) Therefore, Plaintiff has not adduced evidence to support this theory of negligence and gross negligence against SSL.

### 3. Failing to adequately explain his compensation formula

Plaintiff contends that SSL was negligent in failing to adequately explain his compensation formula. Again, Plaintiff has not established that SSL had a duty to explain his compensation to him. Also, Plaintiff's testimony shows that he had an understanding of the compensation formula

---

[6] The practice administrator for SSL.

and that Lavin, the agent of his employer, SSM, did in fact go over the formula with him.  (*See* Plaintiff Depo. [92-1] at 219:2-221:23.)

### 4.    Failing to adequately explain expense determinations

Plaintiff argues that SSL failed to explain general overhead expenses and direct expense determinations, which resulted in unfair compensation.  Because these expenses were built into the compensation model, this is the same argument as his other arguments dealing with his compensation, and fails for the same reasons.

### 5.    Failure to properly assign patients

Plaintiff also claims SSL was negligent in failing to properly assign patients to him.  Even if Plaintiff could establish that SSL had some sort of duty to him in assigning patients when he was not its employee, the only evidence that Plaintiff points to is vague allegations in his own affidavit.  This is not sufficient, as the Fifth Circuit has held that "a self-serving affidavit, without more evidence, will not defeat summary judgment."  *Sanchez v. Dallas/Fort Worth Int'l Airport Bd.*, 438 F.App'x 343, 346-47 (5th Cir. 2011) (citing *DIRECTV, Inc. v. Budden*, 420 F.3d 521, 531 n.49 (5th Cir. 2005)).  His claims cannot proceed under this theory.

### 6.    Failure to properly investigate patient complaints and notify him of the complaints

Plaintiff argues that SSL was negligent in failing to investigate the patient complaints against him.  Again, Plaintiff has not shown that SSL, which was not Plaintiff's employer, had any duty to investigate complaints against him or notify him of the complaints.  Additionally, from the evidence cited by Plaintiff, it is clear that Laura Boyer, on behalf of SSM, spoke with the patients who complained and took actions she deemed appropriate, such as reporting to Lavin or reassigning the patient.  (*See* Boyer Depo. [86-38] at 15:7-21:12.)  Plaintiff does not make any

showing that further action should have been taken, how the actions taken breached whatever duty SSL may have had towards him, or show how those actions taken caused him injury. He has therefore failed to show that SSL was negligent or grossly negligent under this theory.

### 7. Failure to make 401(k) contributions

In 2016, parties agree that there was some failure with regards to contributions made to Plaintiff's 401(k) account. There is no mention of Plaintiff's 401(k) account in his Complaint [1], meaning this is not an issue that is properly before the Court. Furthermore, as SSL was never Plaintiff's employer, it never had any duty to contribute to his 401(k) account. Because it had no such duty, SSL cannot be held liable for negligence or gross negligence with respect to Plaintiff's 401(k) account.

Plaintiff's claims of negligence and gross negligence against SSL therefore fail. Summary judgment will be **granted** as to these claims, and they will be **dismissed with prejudice**.

### E. Count XI – Civil Conspiracy

Plaintiff concedes that his claim of civil conspiracy fails, and it will be **dismissed with prejudice**.

### F. Count XIII – Constructive Trust

In their submissions to the Court concerning Plaintiff's constructive trust claim, parties make arguments only under Louisiana law. Constructive trusts, however, are not recognized under Louisiana law. *Succession of Gaston v. Koontz*, 49 So.3d 1054, 1058 (La. Ct. App. 2010). The authority Plaintiff argues allows for constructive trusts under Louisiana law merely summarizes a party's assertion that they are allowed before explicitly reserving ruling on the issue. *Trust for Schwegmann v. The Schwegmann Family Trust*, 905 So.2d 1143, 1145-48 (La. Ct. App. 2005). Because Plaintiff has made no argument under Mississippi law, the Court considers those

arguments waived. *See Keenan*, 290 F.3d at 262 (quoting *Grenier*, 70 F.3d at 678 (1st Cir. 1995)) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.") Therefore, SSL's motion will be **granted** as to this claim, and it will be **dismissed with prejudice**.

### G.    Count XV – Conversion

Plaintiff contends that SSL's argument against his conversion claim is identical to its argument against his constructive trust claim, and summary judgment should be denied for the same reasons. SSL's argument against the constructive trust claim is that Louisiana law does not recognize such a claim. Its argument against the conversion claim is quite different. Under this claim, SSL argues that there is no evidence that any of Plaintiff's property is in its possession. Even assuming arguendo that SSM holds funds that rightly belonging to Plaintiff, SSL argues, SSM and SSL are separate legal entities. Plaintiff makes no effort to counter this argument either for his constructive trust claim or his conversion claim. Because Plaintiff has failed to establish that there is sufficient legal and evidentiary bases for his conversion claim, the Court will **grant** summary judgment as to this claim, and it will be **dismissed with prejudice**. *See Keenan*, 290 F.3d at 262 (quoting *Grenier*, 70 F.3d at 678 (1st Cir. 1995)) ("If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.")

### H.    Count XVI – Unjust Enrichment

SSL argues that Plaintiff's unjust enrichment claim fails because it is an equitable claim under Louisiana law[7] and unavailable where there are other adequate remedies at law. Under Louisiana law, even a "*potential* claim constitutes a practical remedy at law available to the

---

[7] Parties cite only Louisiana law in their arguments under this claim.

impoverishee." *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct. App. 2008) (emphasis in original). Plaintiff argues that he has no remedy at law because SSL is asking for summary judgment on his contract claims. However, under Louisiana law, the merits of the potential claims do not matter as long as they exist. *See Garber*, 981 So.2d at 100. Furthermore, Plaintiff still has remedies at law against SSM which have not been challenged on summary judgment and would also be sufficiently adequate to defeat his claim of unjust enrichment. Therefore, summary judgment will be **granted** as to this claim, and it will be **dismissed with prejudice**.

## I.      Count XVIII – Fraud in the Inducement of Contract

Under Louisiana law,[8] in order to establish fraud, Plaintiff must show "(1) a misrepresentation, suppression, or omission of true information; (2) an intent to either obtain an unjust advantage or cause damage or inconvenience to the other party; and (3) the error induced by fraud must relate to a circumstance substantially influencing consent to the contract." *Taylor v. Dowling Gosslee & Assocs., Inc.*, 22 So.3d 246, 255 (La. Ct. App. 2009) (citing *Shelton v. Standard/700 Assocs.*, 798 So.2d 60 (La. 2001)). Although "[f]raud cannot be predicated on statements that are promissory in nature or relating to future events," it "may be based on promises made when there was no intention to perform as promised." *Id.* Importantly, "[t]here must be an intent to defraud and actual or potential loss or damage to prove fraud." *Id.*

Plaintiff asserts two fraudulent statements he contends that Lavin made and for which SSL can be held liable. He first claims that Lavin "assured [him] that [he] would make more money on the partnership model." (Plaintiff Affidavit [86-42] at ¶ 7.) Even if this statement later proved to be untrue, which is far from evident based on the evidence provided by Plaintiff, this is a

---

[8] Parties cite only Louisiana law in their arguments under this claim.

promissory statement based on future events and cannot be the basis for a claim of fraud. *See Taylor*, 22 So.3d at 255.

Plaintiff's second allegation of fraud stems from his contention that Lavin "repeatedly represented to me during this same time period that I could go back to the compensation model in the Employment Agreement at any time if I was dissatisfied with the partnership compensation model." (Plaintiff Affidavit [86-42] at ¶ 8.) This theory of fraud was not present in Plaintiff's Complaint [1] and is not properly before the Court. *See De Franceschi v. BAC Home Loans Servicing, L.P.*, 447 F.App'x 200, 204 (5th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 698-99, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009)) (emphasis added); *see also Montgomery v. Housby Mack, Inc.*, No. 3:15-CV-95-DPJ-FKB, 3:16-CV-23-DPJ-FKB, 2016 WL 6427275, at *5 (S.D. Miss. Oct. 28, 2016). However, even if it were, the only support given for this allegation is Plaintiff's own affidavit, which contradicts Plaintiff's previous deposition testimony. In his deposition, Plaintiff stated only that "there was also the kind of suggestion that if [the partnership compensation] didn't work, that we would just go back to the employee model." (Plaintiff Depo. [92-1] at 98:9-11.) "The kind of suggestion" is a far cry from "repeatedly represented," and this kind of vague language is not enough to create a genuine dispute of fact sufficient enough to defeat summary judgment. SSL's motion will therefore be **granted** as to this claim, and it will be **dismissed with prejudice**.

**J.      Counts XVII, XIX-XX – Securities and Racketeering Claims**

Plaintiff concedes that there is no evidence to support his claims against SSL under the Louisiana Securities Act, the Federal Securities Act, or the Louisiana Racketeering Act. These claims will be **dismissed with prejudice**.

## V.  LAVIN'S MOTION FOR SUMMARY JUDGMENT [75]

### A.      Count I – Accounting

Plaintiff's arguments under his accounting claim against Lavin are identical to those under his accounting claim against SSL, and it will be **dismissed with prejudice** for the same reasons. *See supra* IV.B.

### B.      Counts II-IV – Breach of Fiduciary Duties[9]

In his Complaint [1], Plaintiff alleges that Lavin, as a member of SSL, owed fiduciary duties to him because he was a minority interest owner of SSL.  Plaintiff concedes, however, on summary judgment that he is not a member of SSL and therefore does not hold any interest in the LLC.  Nevertheless, he argues that a fiduciary relationship still existed between him and Lavin because he "reposed trust and confidence in Dr. Lavin."  (Memo. in Response [89] at p. 12.) Plaintiff contends that the employment negotiations which Lavin undertook as an agent of both SSL and SSM caused him to put his "fate . . . in Dr. Lavin's hands" and to "understandably and justifiably place[] in [sic] trust and confidence in Dr. Lavin."  (*Id.* at pp. 12-13.)  Plaintiff argues that the trust he placed in Lavin created a fiduciary relationship under Louisiana law, citing *Scheffler v. Adams & Reese, LLP*, in support.  950 So.2d 641 (La. 2007).

The Louisiana Supreme Court in *Scheffler* stated that a fiduciary relationship "exists when confidence is reposed on one side and there is resulting superiority and influence on the other." *Id.* at 647 (quoting *Plaquemines Parish Comm'n Council v. Delta Dev. Co., Inc.*, 502 So.2d 1034, 1040 (La. 1987)) (internal quotations omitted).  The court went on to explain:

> One is said to act in a fiduciary capacity when the business which he transacts, or the money or property which he handles, is not his own or for his own benefit, but for the benefit of another person, as to whom he stands in a relation implying and

---

[9] Though these are three separate claims, breach of fiduciary duty, breach of duty of loyalty, and breach of duty of care, both parties analyze these claims together.  The Court will therefore refer to all three claims as "breach of fiduciary duties," and will analyze them together as well.

> necessitating great confidence and trust on the one part and a high degree of good
> faith on the other.

*Id.* (quoting *State v. Hagerty*, 205 So.2d 369, 374-75 (La. 1967) (internal quotations omitted).  The court stressed that "[t]he defining characteristic of a fiduciary relationship, therefore, is the special relationship of confidence or trust imposed by one in another who undertakes to act primarily for the benefit of the principal in a particular endeavor." *Id.* at 648 (citations omitted).

In order to show that Lavin had a fiduciary relationship with Plaintiff under *Scheffler*, the precedent cited by Plaintiff in support of his arguments, Plaintiff must establish that Lavin underwent an endeavor primarily for the benefit of Plaintiff.  *See id*. at 647-48.  Plaintiff has adduced no evidence that Levin was ever acting on his behalf in his employment negotiations with SSM and SSL.  In fact, at all times relevant to these events, Lavin was operating as a disclosed agent of SSM and SSL.  Generally, "an agent is not responsible to third persons where his principal is disclosed." *Weeden Eng'g Corp. v. Hale*, 435 So.2d 1158, 1160 (La. Ct. App. 1983) (citing *Castille v. Folck*, 338 So.2d 328 (La. Ct. App. 1976)).

Therefore, because Plaintiff has not produced any evidence showing that Lavin at any time purported to be acting on behalf of Plaintiff and inviting him to place his trust and faith in him, the Court finds that Plaintiff has failed to meet his burden to show that Lavin owed any fiduciary duties to him.  Therefore, summary judgment will be **granted** as to his claims for breach of fiduciary duties, and these claims will be **dismissed with prejudice**.

### C.      Counts V-VII, XII – Contract Claims and Equitable Estoppel

Plaintiff concedes that there is no evidence to support his claims of breach of contract, tortious breach of contract, breach of good faith and fair dealing, and equitable estoppel, and they will be **dismissed with prejudice**.

### D. Counts IX-X – Negligence Claims

In his arguments as to why his claims of negligence and gross negligence should not be dismissed, Plaintiff references only allegedly negligent actions taken by SSL and alleges no action taken by Lavin personally.[10]  His arguments fail for two reasons.  First, as explained above, SSL is not liable to Plaintiff for any negligence claim.  *See supra* IV.D.  Second, as explained below, Plaintiff has not shown sufficient evidence exists to pierce the corporate veil between Lavin and SSL or Lavin and SSM.  *See infra* V.K.  Plaintiff has therefore failed to defeat summary judgment as to his negligence claims.  Lavin's motion will be **granted** as to these claims, and they will be **dismissed with prejudice**.

### E. Count XI – Civil Conspiracy

Plaintiff concedes that there is no evidence to support his claim of civil conspiracy against Lavin, and it will be **dismissed with prejudice**.

### F. Count XIII – Constructive Trust

Plaintiff concedes that there is no evidence to support his claim of constructive trust against Lavin, and it will be **dismissed with prejudice**.

### G. Count XV – Conversion

Plaintiff concedes that there is no evidence to support his claim of conversion against Lavin, and it will be **dismissed with prejudice**.

### H. Count XVI – Unjust Enrichment

Plaintiff's arguments under his claim of unjust enrichment against Lavin are identical to his arguments under his claim of unjust enrichment against SSL.  For the same reasons, this claim will be **dismissed with prejudice**.  *See supra* IV.H.

---

[10] Plaintiff does reiterate the same arguments used for his breach of fiduciary duties claims, but those arguments are not persuasive under these claims either.

### I.     Counts VIII, XVIII – Fraud Claims

Plaintiff's claims for fraudulent nondisclosure and fraud in the inducement against Lavin are based on the same statements as his claim of fraudulent inducement against SSL.  For the same reasons, these statements do not rise to the level of fraud against Lavin.  *See supra* IV.I.  Lavin's motion will be **granted** as to these claims, and they will be **dismissed with prejudice**.

### K.     Count XIV – Piercing the Corporate Veil

Plaintiff argues, with no citation to the record or to any authority, that his claim for piercing the corporate veil should survive because it is based on the following exceptions to the general rule of non-liability for LLC members:   fraud, breach of professional duty, and negligent or wrongful acts on the part of the member.  However, as set forth above, Plaintiff has adduced no evidence of any fraud, breach of a professional duty, or any negligent or wrongful act on the part of Lavin.  *See supra* V.B, V.D, V.I.  As such, Plaintiff has not shown that the corporate veils of SSM or SSL should be pierced in order to hold Lavin personally responsible for any wrongful acts those LLCs may have done.  Summary judgment will be **granted** as to this theory of liability, and any claims based on it will be **dismissed with prejudice**.

### L.     Counts XVII, XIX-XX – Securities and Racketeering Claims

Plaintiff concedes that there is no evidence to support his claims against Lavin under the Louisiana Securities Act, the Federal Securities Act, or the Louisiana Racketeering Act.  These claims will be **dismissed with prejudice**.

### VI.  PLAINTIFF'S MOTION FOR SUMMMARY JUDGMENT [77]

### A.     Conversion

Plaintiff argues in his Motion for Summary Judgment [77] that SSL has not adduced adequate evidence to survive summary judgment on their counterclaim of conversion.

"Conversion results from conduct intended to affect property. Conversion requires an intent to exercise dominion or control over goods inconsistent with the true owner's rights." *Masonite Corp. v. Williamson*, 404 So.2d 565, 567 (Miss. 1981). A mistake of fact as to the identity of the true owner is no defense. *Id.* at 568. In order to survive summary judgment, then, Defendants must adduce evidence showing that they were the true owner of some property, in this case money, which Plaintiff exercised dominion or control over inconsistent with their rights.

SSL has offered sufficient evidence to show that there is a dispute of material fact as to whether Plaintiff exercised improper control over monies belonging to them. SSL has produced e-mails showing that there were a number of payments from insurance companies, including Mississippi Medicaid, SAS, and Healthsprings, that were sent to Plaintiff when they rightfully belonged to SSM and SSL, as they were for services completed prior to the termination of Plaintiff's employment with SSM. (*See* Bacon Affidavit [83-3], Attached Exhibits.) Though there is also evidence the Plaintiff caused these payments to be diverted to him instead of Defendants, (*see id.* at ¶ 2), an act of conversion requires only proof that Plaintiff exercised control or dominion over these monies inconsistent with the rights of SSL. Because Plaintiff has not turned these monies over to SSL, the evidence cited by SSL supports a claim of conversion.

SSL also has adduced evidence that Plaintiff has been wrongfully exercising dominion over corporate accounts owned by SSL and using these accounts to pay certain vendors. (*See* Bacon Affidavit [83-3] at ¶ 3 & Attached Exhibits.) This is further evidence supporting Defendants' claim of conversion.

Because SSL has provided evidence that there is a genuine issue of fact on their claim of conversion, the Court will **deny** Plaintiff's motion as to this claim.

## B. Tortious Interference with Business Relationship

SSL asserts a counterclaim for tortious interference with contractual rights, and Plaintiff argues in his motion that SSL has not produced any proof as to these claims. "An action for interference with contract will ordinarily lie when a defendant maliciously interferes with a valid and enforceable contract, thereby causing one party not to perform and resulting in injury to the other contracting part." *Cenac v. Murry*, 609 So.2d 1257, 1268 (Miss. 1992). To succeed on this claim, SSL must establish

1. that the acts were intentional and willful;

2. that they were calculated to cause damage to [SSL] in [its] lawful business;

3. that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of [Plaintiff] (which constitutes malice); and

4. that actual damage and loss resulted.

*Id.* at 1268-69 (citing *Liston v. Home Ins. Co.*, 659 F.Supp. 276, 281 (S.D. Miss. 1986)). "Regarding intent, a showing of specific intent is not required. Rather, intent can be inferred when a defendant knows a contract exists between two parties and does a wrongful act that he is certain or reasonably certain will interfere with the contract." *Neider v. Franklin*, 844 So.2d 433, 437 (Miss. 2003) (citing *Cranford v. Shelton*, 378 So.2d 652, 655 (Miss. 1980)).

Plaintiff's own testimony at his deposition establishes that his office submitted a form to Humana, which caused Plaintiff and two other SSL physicians to be terminated from SSL's group contract with Humana. (*See* Plaintiff's Depo. [77-1] at 235:24-237:23.) Though Plaintiff also testified that he "absolutely" did not intend to terminate the provider agreement between the SSL physicians and Humana, (*id.* at 237:24-238:3), intent can be inferred by a reasonable jury from the fact that his office sent this form to Humana, knowing that it would terminate the SSL physicians from the agreement because it was meant to terminate *Plaintiff* from the agreement and their names

were included alongside his name.[11]  *See Neider*, 844 So.2d at 437.  SSL has also established that there was actual damage and loss in the form of lost revenue and expenses incurred in attempting to get its physicians re-credentialed with Humana.  (*See* Bacon Affidvait [83] at ¶ 4.)

Based on the evidence before it, then, the Court finds that there is a genuine dispute as to material fact with respect to this claim and will **deny** summary judgment as to it.

## C.    Equity

Though Plaintiff in his Motion for Summary Judgment [77] labels this claim as a claim of equity in his heading, the claim actually brought by SSL is a claim for breach of contract.[12]  Nevertheless, Plaintiff argues that this breach of contract claim fails because SSL has presented no evidence that it was a third party beneficiary to the Employment Agreement between Plaintiff and SSM and, even if it were, the Employment Agreement only applied to his first year of employment.

SSL's breach of contract claim is not based on the written Employment Agreement but on the oral agreement between SSM and Plaintiff regarding the partner compensation model and Plaintiff's continued employment with SSM.[13]  While there remains disputes of facts over the terms of this agreement or whether Plaintiff understood them, there is evidence, albeit disputed, showing that Plaintiff could choose the amount of compensation he drew each month and that any amount drawn that exceeded the difference between his revenue and his expenses was owed to SSM and SSL.  (*See* Lavin Affidavit [83-1] at ¶¶ 21-22.)  Though Plaintiff makes no argument as

---

[11] Both parties make arguments to the form itself, but the Court is unable to appropriately analyze these arguments as neither side has provided the Court with the form.

[12] The Court understands Plaintiff's confusion, as SSL's counterclaim does assert that this claim is being brought "as a matter of equity," but it also clearly states that "SSL is a third party beneficiary of the agreement Plaintiff made with SSM," asserting its rights to the benefits of the contract, while stating that, because "SSL advanced funds to SSM as necessary to fund the operations of SSM," equity would allow it to recover those funds.  (Answer [25] at ¶ 18.)

[13] The only arguments Plaintiff makes against the existence of this verbal agreement is that there was no meeting of the minds as he never had any understanding of the compensation plan to agree with it.  There is evidence, however, that he did have this understanding.  (*See* Plaintiff Depo. [92-1] at 219:2-221:23.)

to his alleged breach of this agreement, he personally testified at his deposition that the financial documentations he received showed that his compensation draws exceeded what he was allowed. (*See* Plaintiff Depo. [83-2] at 219:2-220:5.) Therefore, the fact that the Employment Agreement was intended only for the first year of employment is of no consequence because the evidence shows a dispute of fact as to whether there was a verbal agreement and whether Plaintiff breached that agreement.

Plaintiff also argues that SSL cannot argue in its motion that it is not liable to a breach of a contract it is not a party to and still bring a breach of contract against him under that same contract. Plaintiff ignores, however, the well-settled law that third party beneficiaries can bring suit for breach of contract. Under Mississippi law, "[a] third person may enforce a promise made for his benefit even though he is a stranger to the contract or to the consideration." *Cope v. Thrasher Constr., Inc.*, 231 So.3d 231 So.3d 989, 993 (Miss. 2017) (quoting *Miss. High Sch. Activities Ass'n v. Farris*, 501 So.2d 393, 395096 (Miss. 1987)). There is evidence that the agreed-to compensation model required Plaintiff to share in the expenses of SSL, which was the sole owner of SSM. (*See* Lavin Affidavit [83-1] at ¶ 22.) There is therefore a genuine dispute of material fact as to whether SSL was a known third party beneficiary of the agreement, and SSL has adduced enough evidence as to this claim to defeat summary judgment. Plaintiff's motion will also be **denied** to this claim as well.

## VII. CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that SSL's Motion for Summary Judgment [73] is **granted**. The claims against SSL are **dismissed with prejudice**. SSL remains a party in this case as it has counterclaims which remain pending.

IT IS FURTHER ORDERED AND ADJUDGED that Lavin's Motion for Summary Judgment [75] is **granted**.  The claims against Lavin are **dismissed with prejudice**.  Lavin remains a party in this case as he also has counterclaims which remain pending.

IT IS FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion for Summary Judgment [77] is **denied**.

SO ORDERED AND ADJUDGED, on this, the 13th day of June, 2018.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE